ELECTRONICALLY FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION AT LEXINGTON
## CASE NO: 5:16-cv-00018 – KKC

**859 BOUTIQUE FITNESS, LLC**                                              **PLAINTIFF**

**v.**     **PLAINTIFF, 859 BOUTIQUE FITNESS, LLC'S RESPONSE IN OPPOSITION TO**
       **DEFENDANT, CYCLEBAR FRANCHISING, LLC'S MOTION TO DISMISS**

**CYCLEBAR FRANCHISING, LLC**                                              **DEFENDANT**

*     *     *     *     *

Comes Plaintiff, 859 Boutique Fitness, LLC ("859 Boutique Fitness"), by counsel, and provides this Response in Opposition to Defendant, CycleBar Franchising, LLC's ("CycleBar") Motion to Dismiss the Complaint of 859 Boutique Fitness ("Motion to Dismiss").

### INTRODUCTION

The individuals who later became members of 859 Boutique Fitness and CycleBar, beginning on or around August 19, 2015 engaged in extensive email and telephonic dialogue,[1] in and around September 2015, 859 Boutique Fitness entered into discussions with CycleBar to become a franchisee of CycleBar.  These discussions progressed rapidly over the next several months culminating in a closing call with the CycleBar executive team on or about November 11, 2015 ("Closing Call") wherein CycleBar made *express representations* that all terms and conditions of the Franchise Agreement *had been agreed to* by all parties, including CycleBar, and that *CycleBar executives had executed the Franchise Agreement* immediately.[2]  In reliance

---

[1] See emails collectively attached hereto and made a part hereof as **Exhibit 1** (attachments to said emails are not included herewith due to the voluminous nature of same; however, at the request of the Court, said attachments can be provided).

[2] See, without limitation, emails of November 11, 2015 (the date of the Closing Call), true copies of which are collectively attached hereto and made a part hereof as **Exhibit 2**.

upon said representations, 859 Boutique Fitness immediately wired $59,500.00 in franchise fees and training fees to CycleBar ("Franchise Fees").

## PERTINENT FACTS

1.      859 Boutique Fitness was formed on October 1, 2015 for the sole purpose of becoming a franchisee of CycleBar.[3]

2.      In an effort to induce and entice 859 Boutique Fitness and its members into becoming franchisees of CycleBar, CycleBar provided corporate financials purportedly supporting its representations to 859 Boutique Fitness that 859 Boutique Fitness' CycleBar franchise would generate $250,000.00 in profits per year; thus resulting in $2,500,000.00 in profits over the ten (10) year term of the relationship.[4]

3.      In violation of the Franchise Rule, 16 CFR Part 436.9, and in continuation of its efforts to entice 859 Boutique Fitness, Todd Kirby, Director of Franchise Development for CycleBar ("Mr. Kirby"), provided 859 Boutique Fitness with financials for SoulCycle, Inc.[5]

4.      At the request of CycleBar, 859 Boutique Fitness provided CycleBar with personal financial statements of its members; CycleBar performed personal and financial background checks of its members and other records of personal nature of its members and potential employees were provided at the request of CycleBar. *CycleBar presently retains these confidential documents and this confidential information*.

5.      Two days after the Closing Call in which 859 Boutique Fitness became a franchisee, for reasons which can only be described as arbitrary, capricious and self-serving,

---

[3] See Articles of Organization, a true copy of which is attached hereto and made a part hereof as **Exhibit 3**.
[4] See "Franchise Agreement" between CycleBar and 859 Boutique Fitness, a true copy of which is attached hereto and made a part hereof as **Exhibit 4**.
[5] See, without limitation, September 22, 2015 email from Mr. Kirby to 859 Boutique Fitness, a true copy of which is attached hereto and made a part hereof as **Exhibit 5**.

CycleBar informed 859 Boutique Fitness, via email dated November 13, 2015,[6] that CycleBar was "not going to be selling [859 Boutique Fitness] a CycleBar franchise;" and that CycleBar would be "refunding [859 Boutique Fitness]'s franchise fees."

6.      Following CycleBar's wrongful termination of its relationship with 859 Boutique Fitness, 859 Boutique Fitness became aware that CycleBar terminated said relationship in order to sell its St. Louis market franchise to another entity; the precise exclusive territory location 859 Boutique Fitness had been granted to open its franchise, as an exclusive franchisee of CyclBar.

7.      By reason of and in reliance upon the representations and warranties of CycleBar, 859 Boutique Fitness expended tremendous resources including but not limited to costs and attorneys' fees, in furtherance of its contractual relationship with CycleBar including, but not limited to the retaining of CBRE, Inc., a commercial real estate firm, for the express purposes of locating real estate in St. Louis for which to house 859 Boutique Fitness' CycleBar franchise.

## LEGAL STANDARD

The motion to dismiss for failure to state a claim is viewed with disfavor and rarely granted.[7]   It is not the province of the trial court to consider whether a plaintiff can prove its allegations or ultimately prevail.[8]   As a practical matter, dismissal for failure to state a claim should be granted only when the allegations in the complaint show an insuperable bar to recovery.[9]   In deciding this Motion, this Court must take every well-pled allegation in the Complaint as true and construe it in the light most favorable to 859 Boutique Fitness for, when evaluating a Motion to Dismiss, a Complaint must be liberally construed in the light most

---

[6] A true copy of the November 13, 2015 email is attached hereto and made a part hereof as **Exhibit 6**.
[7] Wright & Miller, Federal Practice and Procedure (2d ed.), Civil § 1357.
[8] City of Louisville v. Stock Yards Bank & Trust Co., 843 S.W.2d 327 (Ky. 1992); Kevin Tucker & Associates, Inc. v. Scott & Ritter, Inc., 842 S.W.2d 873 (Ky. Ct. App. 1992) (disapproved of by Degener v. Hall Contracting Corp., 27 S.W.3d 775 (Ky. 2000).
[9] Philipps & Kramer, Kentucky Practice (6th ed.), Rules of Civil Procedure Annotated, Rule 12.02.

favorable to the plaintiff and all allegations should be taken as true.[10] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relieve that is plausible on its face."[11] Thus it should not grant the Motion to Dismiss unless it appears that 859 Boutique Fitness "would not be entitled to relief under any set of facts which could be proved in support" of its claims.[12]

## ARGUMENTS

### I

### 859 BOUTIQUE FITNESS' COMPLAINT SETS FORTH FACTS SUFFICIENT TO SUPPORT ITS CLAIM FOR BREACH OF CONTRACT

Count I of 859 Boutique Fitness' Complaint clearly states that CycleBar failed to comply with the terms of the Franchise Agreement made by CycleBar with 859 Boutique Fitness, when CycleBar wrongfully terminated its relationship with 859 Boutique Fitness and refused to sell it a franchise in the St. Louis market. Again, prior to and during the November 11, 2015 Closing Call CycleBar made *express representations* that all terms and conditions of the Franchise Agreement *had been agreed to* by all parties, including CycleBar, and that *CycleBar executives had executed the Franchise Agreement* immediately.[13] CycleBar now disingenuously attempts to hide behind the statute of frauds by claiming that the Franchise Agreement was never executed by CycleBar executives and cites to the "fact" that "VOID" is imprinted upon the Franchise Agreement attached to 859 Boutique Fitness' Complaint as "Exhibit B"; however, this "fact" is merely the product of printing the Franchise Agreement prior to the Closing Call before the parties had fully executed the Franchise Agreement. This "fact" does not negate the express

---

[10] Littleton v. Plybon, 395 S.W.3d 505, 507 (Ky. Ct. App. 2012) (internal citations omitted).
[11] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted); see also Bell Atl. Corp. v. Twombly, 550 U.S. 662, 678 (2009).
[12] Broyde v. Gotham Tower, Inc., 13 F.3d 994 (6th Cir. 1994).
[13] See, without limitation, Exhibit 1.

representations of CycleBar prior to and during the Closing Call that the Franchise Agreement was to be executed by CycleBar during the Closing Call.

Breach of contract claims consist of three elements: (1) the existence of a valid contract; (2) breach of the contract; and (3) damages to the plaintiff.[14]  Express representations were made to 859 Boutique Fitness before and during the Closing Call that the Franchise Agreement was signed by CycleBar; and it was in reliance of these express representations that 859 Boutique Fitness acted in furtherance of the Franchise Agreement including, but not limited to, executing the Franchise Agreement and wiring the required Franchise Fees to CycleBar.

As a direct and proximate result of the breaches by CycleBar of the terms of the Franchise Agreement made by CycleBar with 859 Boutique Fitness, 859 Boutique Fitness has suffered special damages consisting of, without limitation: (i) lost profits that would have been earned in 859 Boutique Fitness from the operation of its CycleBar franchise and (ii) lost enterprise value of 859 Boutique Fitness as a going concern attributable to the ownership and operation of the CycleBar franchise.  Such lost profits and loss of enterprise value arose ordinarily and naturally from CycleBar's breach of its contract obligations to make 859 Boutique Fitness a franchisee of CycleBar.  Such damages and circumstances giving rise to such damages were contemplated by the parties when CycleBar agreed to execute the Franchise Agreement made with 859 Boutique Fitness.

Moreover, immediately following CycleBar's wrongful termination of its contractual relationship with 859 Boutique Fitness, CycleBar sold its St. Louis area franchise to Michael Shalom.  859 Boutique Fitness was made aware of this transaction by reason of an email from

---

[14] Mercurty Development, LLC v. Motel Sleepers, Inc., 2013 WL 500337, E.D.Ky., September 25, 2013 (citing Ward v. Daugherty, 14 S.W.2d 1089, 1089 (Ky. 1929).

CycleBar to Mr. Shalom.[15]

As such, the Court should permit Count I of 859 Boutique Fitness' Complaint to continue, so that it can develop evidence to support the well-pled Complaint.

II

## 859 BOUTIQUE FITNESS IS NOT PRECLUDED FROM INVOKING THE DOCTRINE OF PROMISSORY ESTOPPEL

CycleBar's claim that the statute of frauds precludes 859 Boutique Fitness from invoking the doctrine of promissory estoppel to enforce the Franchise Agreement is misplaced and incorrect. The law will not permit a party to take advantage of the statute of frauds for purposes of committing fraud on another. See UPS v. Rickert, 996 S.W.2d 464, 470 (Ky. 1999).

"Kentucky is with the majority of states in holding that the statute of frauds is *not a bar* to a fraud or promissory estoppel claim . . ." Id. (emphasis provided). "[P]romissory estoppel can be invoked when a party reasonably relies on a statement of another and materially changes his position in reliance on the statement." Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc., 113 S.W.3d 636, 642 (Ky. Ct. App. 2003). Under Kentucky law, the four elements of promissory estoppel are "(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promise; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." Bergman v. Baptist Healthcare Sys., Inc., 344 F.Supp.2d 998, 1003 (W.D.Ky. 2004) (quoting Res0Care, Inc. v. Omega Healthcare Investors, Inc., 187 F.Supp.2d 714, 718 (W.D.Ky.2001)). Additionally, the promisee's reliance on the promise must be justified. See FS Invs., Inc. v. Asset Guar. Ins. Co., 196 F.Supp.2d 491, 507 (E.D.Ky. 2002); see also McCarthy v. Louisville Cartage Co., 796 S.W.2d 10, 12-13 (Ky. Ct. App. 1990).

---

[15] See November 25, 2015 email from CycleBar to Michael Shalom, a true copy of which is attached hereto and made a part hereof as **Exhibit 7**.

"Promissory estoppel is an equitable doctrine."  **See** 28 Am.Jur.2d "Estoppel and Waiver §§ 1, 55 (2000).  As set forth hereinabove, CycleBar *repeatedly promised* 859 Boutique Fitness that CycleBar did execute the Franchise Agreement making 859 Boutique Fitness its exclusive franchisee in the St. Louis market.  CycleBar now contends that it did not execute the contract (Franchise Agreement) as expressly represented during the Closing Call; therefore, if it is determined that there is no written contract between and among CycleBar and 859 Boutique Fitness, 859 Boutique Fitness may recover, in the alternative, under the equitable doctrine of Promissory Estoppel.  **See** 28 Am.Jur.2d "Estoppel and Waiver §57 (2000) (Although contract and promissory estoppel claims may be pled in the alternative, a plaintiff cannot recover under both theories for the same promise.).

859 Boutique Fitness reasonably relied on CycleBar's promises to their detriment. CycleBar expected that its promises to execute the Franchise Agreement making 859 Boutique Fitness its exclusive franchisee in the St. Louis market would induce 859 Boutique Fitness to incur substantial costs related to development, marketing and related expenses.  CycleBar's promises as set forth herein did in fact induce 859 Boutique Fitness to incur *substantial costs* related to development, marketing, hiring of employees (as CycleBar required 859 Boutique Fitness to commit to a manager relocating to the St. Louis market), hiring of real estate brokers, hiring of consultants and related expenses in excess of any minimum dollar amount necessary to establish the jurisdiction of the Court.

CycleBar knew that 859 Boutique Fitness would rely on its promises to execute the Franchise Agreement making 859 Boutique Fitness its exclusive franchisee in the St. Louis market.  859 Boutique Fitness did in fact rely on CycleBar's promises to its detriment in incurring substantial costs related to development, marketing, hiring of employees, hiring of real

7

estate brokers, hiring of consultants and related expenses in excess of any minimum dollar amount necessary to establish the jurisdiction of the Court.

CycleBar acted with the intention and expectation that its promises would be relied upon by 859 Boutique Fitness, who would never have incurred said substantial costs related to development, marketing, hiring of employees, hiring of real estate brokers, hiring of consultants and related expenses in excess of any minimum dollar amount necessary to establish the jurisdiction of the Court, but for CycleBar's repeated promises to execute the Franchise Agreement making 859 Boutique Fitness its franchisee in the St. Louis market.

As such, injustice can only be avoided by, in the alternative: (i) enforcing CycleBar's promises; (ii) restoring the parties to their positions prior to the negotiation of the relationship between CycleBar and 859 Boutique Fitness; and (iii) awarding compensatory damages to 859 Boutique Fitness for pecuniary harm suffered as a result of CycleBar's failure to sell 859 Boutique Fitness a CycleBar franchise in the St. Louis market, plus pre- and post-judgment interest thereon.   Therefore, the Court should permit Count II of 859 Boutique Fitness' Complaint to continue, so that it can develop evidence to support the well-pled Complaint.

### III

### 859 BOUTIQUE FITNESS' CLAIM FOR BREACH OF WARRANTY IS PROPERLY BEFORE THIS COURT

CycleBar's Motion to Dismiss again attempts to hide behind the Franchise Agreement with the word "VOID" stamped across it to claim that 859 Boutique Fitness is precluded from asserting claims for breach of warranty; and, again, CycleBar glosses over the *facts* set forth in the Complaint of 859 Boutique Fitness establishing CycleBar's promises and express representations that the Franchise Agreement was executed at the Closing Call by *all parties*.

As set forth in CycleBar's Motion to dismiss, "[u]nder Kentucky law, liability for breach of warranty is governed by the terms of the parties' contract and by the statutory provisions of Kentucky's Uniform Commercial Code ("UCC") to the extent that the UCC applies." Waterfill v. Nat'l Molding Corp., 215 F.App'x 402, 405 (6th Cir. 2007). While CycleBar contends that there is no enforceable contract between it and 859 Boutique Fitness, the facts set forth hereinabove and the facts set forth in the Complaint herein contradict that contention, for the Franchise Agreement was to be executed during the Closing Call in accordance with the express representations of CycleBar to 859 Boutique Fitness.

As such, CycleBar failed to comply with the terms of the actual and implied warranties made by CycleBar with 859 Boutique Fitness, when CycleBar offered a franchise to 859 Boutique Fitness in the St. Louis market and subsequently wrongfully terminated the contract made by CycleBar with 859 Boutique Fitness. Therefore, the Court should permit Count III of 859 Boutique Fitness' Complaint to continue, so that it can develop evidence to support the well-pled Complaint.

## IV

### 859 BOUTIQUE FITNESS HAS PROPERLY PLED ITS CLAIMS AGAINST CYCLEBAR FOR NEGLIGENT AND/OR FRAUDULENT MISREPRESENTATIONS

"For a representation to qualify as a fraudulent misrepresentation, the party making the representation – at the time of making it – must know the representation is false or make it recklessly without any knowledge of its truth." PCR Contractors, Inc. v. Danial, 354 S.W.3d 610, 615 (Ky. Ct. App. 2011) (citing Presnell Const. Managers, Inc. v. EH Const., LLC, 134 S.W.3d 575, 580 (Ky. 2004). "This rule applies equally to representations of a declarant's present intent to perform a future promise." Id. (citing Bear, Inc. v. Smith, 303 S.W.3d 137, 142 (Ky. Ct. App. 2010).

The representations made by CycleBar to 859 Boutique Fitness, which are described herein: (i) constitute material representations; (ii) which were either known to be false or were made with a reckless disregard as to their truth; (iii) were made with the purpose of inducing 859 Boutique Fitness to act in reliance thereon; and (iv) 859 Boutique Fitness in fact relied thereon resulting in their damages and losses. Moreover, CycleBar's immediate sale of its St. Louis area franchise to Mr. Shalom establishes evidence supporting 859 Boutique Fitness' contention that CycleBar, at the time of the Closing Call, had no intention to honor its express representations upon which 859 Boutique Fitness detrimentally relied. See Id.; see also Restatement (Second) Torts § 530 (1976) (where evidence exists demonstrating that declarant [CycleBar] had no intention of keeping its promise [to sell its St. Louis are franchise to 859 Boutique Fitness] at the time declarant [CycleBar] made it, he who relied upon the representation [859 Boutique Fitness] may maintain an action of deceit.)).

As such, the Court should permit Count IV of 859 Boutique Fitness' Complaint to continue, so that it can develop evidence to support the well-pled Complaint

## V

## 859 BOUTIQUE FITNESS MAY RECOVER AGAINST CYCLEBAR FOR VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT

KRS 367.815, Liability for false, misleading, or deceptive representations, clearly establishes 859 Boutique Fitness' ability to recover against CycleBar for its flagrant breach of the Kentucky Consumer Protection Act ("KCPA"). KRS 367.815(1) states:

> (1) *Any person who offers a business opportunity and makes representations that are false, misleading, or deceptive shall be liable to the consumer/investor of such business opportunity* in an amount equal to the sum of his actual damages or fifteen hundred dollars ($1,500), whichever is greater, as well as the cost of the action together with reasonable attorney's fees, as determined by the court.

(Emphasis provided).  Kentucky, through KRS 367.815, "provides for a limited private right of action for the purchaser of a business opportunity" under the Kentucky Consumer Protection Act.  Commonwealth ex rel. Stephens v. North American Van Lines, Inc., 600 S.W.2d 459, 461 (Ky. Ct. App. 1979) (holding that the KCPA "was broadly designed to curtail unfair, false, misleading or deceptive practices in the conduct of commerce . . . [and] therefore *not limited to prosecuting only those selected types of illegal business acts or practices which are used in the merchandising of goods and services intended for personal, family or household use*." (Emphasis provided).[16]

CycleBar made false, misleading and deceptive representations to the people of this Commonwealth, 859 Boutique Fitness by and through its members, for the purposes of offering a business opportunity (to become a franchisee) and, thus, 859 Boutique Fitness is entitled to seek recovery of both damages and attorney's fees and costs for prosecution of its claims against CycleBar.  Succinctly stated, CycleBar's assertion that the KCPA is limited to the sale of goods for personal, family or household purposes is not applicable here.

As such, the Court should permit Count V of 859 Boutique Fitness' Complaint to continue, so that it can develop evidence to support the well-pled Complaint.

**VI**

## NO PRIVATE RIGHT OF ACTION EXISTS FOR CYCLEBAR'S VIOLATION OF 16 CFR PART 436

859 Boutique Fitness acknowledges that, pursuant to the language of 16 CFR Part 436, there is currently no private right of action for CycleBar's wrongful provision of financials for SoulCycle, Inc. in violation of the provisions of 16 CFR Part 436.  As such, 859 Boutique Fitness voluntarily dismisses Count VI of its Complaint against CycleBar without prejudice.

---

[16] Specifically, the Court in Commonwealth ex rel. Stephens establishes that the purchaser of a franchise meets the definition of "consumer" for purposes of the KCPA.

## VII

### PUNITIVE DAMAGES IS AN AVAILABLE REMEDY TO 859 BOUTIQUE FITNESS FOR THE CONDUCT OF CYCLEBAR

The conduct of CycleBar, as set forth herein and in the Complaint of 850 Boutique Fitness, constitutes gross negligence, oppression, fraud, malice, or bad faith, with willful and wanton disregard for the rights of 859 Boutique Fitness within the meaning of KRS 411.184, KRS 411.186 and Kentucky common law. It is axiomatic that "the purpose of punitive damages is to punish and deter a defendant's misconduct." Phelps v. Louisville Water Co., 103 S.W.3d 46,55 (Ky. 2003). Punitive damages are available to remedy the full panoply of torts upon a showing of "conduct that is so outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Horton v. Union Light, Heat & Power Co., 690 S.W.2d 382, 389 (Ky. 1985) (quoting Restatement (Second) of Torts § 908(2) (1979).

The Kentucky Supreme Court has held that, under the common law, punitive damages may be awarded on a showing of gross negligence, and that KRS 411.184 cannot constitutionally exclude recovery of punitive damages on this basis. Williams v. Wilson, 972 S.W.2d 260, 264 (Ky. 1998). "Gross negligence" is wanton or reckless disregard for the lives, safety or property of others. Phelps, 103 S.W.3d at 51.52. The salient factor in an award of punitive damages is whether the misconduct was "outrageous" in character rather than whether the injury was intentionally or negligently inflicted. Horton, 690 S.W.2d at 389. Malice or wanton or reckless disregard for the rights of others may be implied from the nature of the misconduct. Id. at 389-90. Whether tortious conduct rises to the level warranting punitive damages may be determined by the jury based on the evidence. See Peoples Bank of Northern Kentucky v. Crowe Chizek and Company, 277 S.W.3d 255, 268 (Ky. Ct. App. 2008).

As such, and while punitive damages are not a separate cause of action, punitive damages are a remedy available under 859 Boutique Fitness' claim for negligent and/or fraudulent misrepresentation (Count IV).   Toon v. City of Hopkinsville, No. 5:09-CV-37, 2011 WL 1560590 at *3 n. 6 (W.D.Ky. April 14, 2011) (citing Salisbury v. Purdue Pharm., L.P., 166 F.Supp.2d 546, 548, n. 1 (E.D.Ky. 2001); see also Dalton v. Animas Corp., 913 F.Supp.2d 370, 378 (W.D.Ky. 2012) ("[A] claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action.").   Therefore, the stylistic choice of pleading punitive damages as a separate count in the Complaint of 859 Boutique Fitness or in the prayer for relief does not mean the claim must be dismissed; i.e. substance over form.

## CONCLUSION

Based upon the foregoing, 859 Boutique Fitness respectfully requests this Court (1) permit Counts I, II, III, IV, V and VII of 859 Boutique Fitness' Complaint to continue, so that it can develop evidence to support the well-pled Complaint; and (2) dismiss Count VI of 859 Boutique Fitness' Complaint, without prejudice, for no such private cause of action currently exists with respect to CycleBar's violation of 16 CFR Part 436.

Respectfully submitted,

/s/ Masten Childers, III
Robert E. Maclin, III, Esq.
Masten Childers, III, Esq.
MCBRAYER, MCGINNIS, LESLIE
& KIRKLAND, PLLC
201 East Main Street, Suite 900
Lexington, Kentucky  40507
Telephone:  (859) 231-8780
Facsimile: (859) 231-6518
remaclin@mmlk.com
mchilders@mmlk.com
*Counsel for Plaintiff,*
*859 Boutique Fitness, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF on this 16th day of February, 2016 to the following:

Kristen Orr, Esq.
Emily Startsman, Esq.
Stites & Harbison, PLLC
250 West Main Street, Suite 2300
Lexington, Kentucky 40507
korr@stites.com
estartsman@stites.com

Norman M. Leon, Esq.
DLA Piper, LLP
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
norman.leon@dlapiper.com

Karen C. Marchiano
DLA Piper, LLP
2000 University Avenue
East Palo Alto, California 94303
karen.marchiano@dlapiper.com

*Counsel for Defendant, CycleBar Franchising, LLC*

/s/ Masten Childers, III
*Counsel for Plaintiff,*
*859 Boutique Fitness, LLC*

P:\Rob Maclin\Pulliam, Royce\Cycle Bar\Pleadings\Response.MTD.doc